IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


THOMAS C. O`BRYANT,
        Plaintiff,

vs.                                              Case No. 5:05cv131/RS/EMT

JASON LANGFORD, et al.,
        Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon Defendants'
special reports and supporting documents (Docs. 37, 66).  Plaintiff, an inmate of the Florida
correctional system proceeding pro se and in forma pauperis, filed a response to the special reports
and supporting documents (Docs. 69, 71).  The court entered orders advising the parties of the
importance and ramifications of Rule 56 summary judgment consideration, and informing the parties
that the special reports would be construed as motions for summary judgment as of April 2, 2007
(Docs. 11, 21, 33, 67, 70).  Upon review of the parties' submissions, it is the opinion of the
undersigned that the motions for summary judgment filed by Defendants should be granted as to
Plaintiff's claims against them in their official capacity.  The motions should be denied as to
Plaintiff's First Amendment claim against each Defendant in his individual capacity and denied as
to Plaintiff's Eighth Amendment claim against each Defendant in his individual capacity, with the
exception of Defendant Pippin, who is entitled to summary judgment on Plaintiff's Eighth
Amendment claim against him.

I.      PROCEDURAL HISTORY

Plaintiff filed his amended complaint alleging Defendants violated his First and Eighth
Amendment rights by procuring the services of another inmate to attack him in retaliation for

Plaintiff's filing grievances (Doc. 8).  As relief, Plaintiff seeks nominal damages in the amount of $1.00 from each Defendant, punitive damages in the amount of $50,000.00 from each Defendant, compensatory damages in the amount of $50,000.00, and court costs (*id.* at 18–19).

Defendants, in their motions for summary judgment, assert that they are entitled to summary judgment on Plaintiff's claims because the undisputed material facts show that Defendants did not violate Plaintiff's First and Eighth Amendment rights (Doc. 37 at 11–23; Doc. 66 at 4–8). Additionally, they argue that they are entitled to qualified immunity to the extent they are sued in their individual capacities because the evidence does not show a constitutional violation (Doc. 37 at 23–25; Doc. 66 at 3).  Finally, Defendants claim, and Plaintiff concedes, that they are entitled to Eleventh Amendment immunity as to Plaintiff's claims for monetary damages against them in their official capacities (*id.* at 23; Doc. 66 at 3; Doc. 69 at 50).

II.    FACTS

The following material facts are without substantial controversy.[1]  At all times relevant to this action Plaintiff was an inmate at Holmes Correctional Institution (HCI).  In December of 2004, Plaintiff filed a grievance against Defendant Segers, and Segers returned the grievance to Plaintiff on the evening of December 10, 2004 (Doc. 69, Ex. A, Affidavit of Thomas O'Bryant  ¶ 11).  In March of 2005, Plaintiff filed a grievance against Defendant Durrance complaining that Durrance failed to properly supervise the officers under his command (*id.*  ¶ 111).  The grievance was not answered (*id.*).  On April 24 or 25, 2005, Plaintiff filed a grievance against Defendants Segers and Langford for failing to turn the lights out nearly one hour after they were supposed to do so (*id.* ¶ 110).  Defendant Langford gave the grievance back to Plaintiff on April 28, 2005 (*id.*).

On April 27, 2005, Officer Long moved Plaintiff's cellmate, Michael Anderson, from cell #H2118 to cell #H2117 (*id.*, Ex. A, O'Bryant Aff. ¶ 40, Ex. B, Affidavit of Michael Anderson ¶ 3). A few hours later, Inmate Larry Lewis was moved from cell #H2105 to Plaintiff's cell, cell #H2118

---

[1]The court conveys as facts those factual allegations of Plaintiff's verified amended complaint (Doc. 8), Defendants' affidavits in support of their motions for summary judgment, including attachments (Docs. 37, 66), and Plaintiff's affidavits in support of his response to Defendants' special reports (Doc. 69), to the extent they comply with the requirements for affidavits specified in Rule 56--that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see, e.g.*, Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980).

(*id.*, Ex. A, O'Bryant Affidavit ¶ 45, Ex. O-15, Daily Movement Sheet).  On April 29, 2005, Inmate Lewis approached Plaintiff from behind and struck him on the right side of his face with his closed fist (*id.*, Ex. A, O'Bryant Affidavit ¶ 71).  The left side of Plaintiff's face struck the wall as a result of the force of Lewis' punch (*id.* ¶ 72).  As Plaintiff turned to face Lewis, Lewis punched him in the face again, causing Plaintiff to trip over the toilet and fall (*id.* ¶ 73).  While Plaintiff was on the floor, Lewis continued to repeatedly punch and kick him (*id.* ¶ 75).  Officers Slay and Gilley arrived at the cell and broke up the attack (*id.* ¶ 77).  Lewis and Plaintiff were removed from the cell and locked in the showers (*id.* ¶ 78).  Plaintiff's injuries included two abrasions on his back, three cuts above his left eye, one cut on the right side of his forehead, one cut above his left ear, one cut on his right cheek, swelling on his left temple, bruising on his left calf, left thigh, and right thigh, swelling in several places, a black eye, and sharp pain in the left side of his face near his temple when he opened his mouth (*id.* ¶¶ 80, 82).  While in the shower, a picture was taken of Plaintiff's bloodied face (*id.* ¶ 79).  Plaintiff was seen by Nurse Whitehurst, who documented and treated his injuries (Doc. 69, Ex. D).  Plaintiff was then returned to his cell (Doc. 69, Ex, A, O'Bryant Aff. ¶ 85).  Later that evening, Plaintiff experienced severe headaches, dizziness, tunnel vision and "seeing stars," disorientation, nausea, and vomiting (*id.* ¶ 84).  Inmate Lewis was temporarily placed in cell #H2105, where he was originally moved from, and then Lewis and his cellmate were moved to cell #H2220 (Doc. 69, Ex. B, Anderson Aff. ¶ 14, Ex. O-17).  On May 4, 2005, Plaintiff was still experiencing headaches, pain in his jaw, and nausea (Doc. 69, Ex, A, O'Bryant Aff. ¶ 95).  Inmate Lewis was issued a disciplinary report for unarmed assault and received 60 days in disciplinary confinement (Doc. 37, Ex. H).

Defendant Langford was not working during the shift when Inmate Lewis was moved to Plaintiff's cell (Doc. 37, Ex. F, Affidavit of Jason Langford ¶ 3).  By virtue of his position, Defendant Langford had no authority to direct other officers or sergeants to move inmates from cell to cell (*id.*).

Defendant Segers was not working during the shift when Inmate Lewis was moved to Plaintiff's cell, nor did he direct anyone to move Lewis to Plaintiff's cell (Doc. 37, Ex. J, Affidavit of Ronnie Segers ¶ 4).

Defendant Pippin had no involvement in the decision to move Inmate Lewis into Plaintiff's cell (Doc. 37, Ex. D, Affidavit of Royce Pippin ¶ 6).  Pippin did not direct anyone to place any inmate in the cell with Plaintiff (*id.*).  Decisions about cell assignments and inmate movement within the housing units are usually made by housing staff, not colonels (*id.*).

In April of 2005, Defendant Durrance instructed Sergeant White and other confinement sergeants to move inmates at their convenience for the purpose of emptying cells so that the maintenance crew could have access to the cells to paint them in preparation for audits by the American Correctional Association (Doc. 37, Ex. G, Affidavit of Jesse Durrance ¶ 3).  Although Defendant Durrance was not working on April 27, 2005, when Inmate Lewis was moved into Plaintiff's cell (*id.*), Durrance had instructed Sergeant White to move Lewis into Plaintiff's cell, and Durrance told White that the purpose of the move was to accommodate the paint crew (Doc. 37, Ex. C, Affidavit of Michael S. White).   Sergeant White moved Lewis into Plaintiff's cell on April 27 (*id.*).  Several other moves were planned, but contact was made with the paint crew, and they indicated they would not be in the unit that day, so no other moves were made on April 27 (*id.*).

On April 29, 2005, after Lewis' attack on Plaintiff, Lewis was placed back in his former cellmate's cell, and then the two of them were moved to another cell (Doc. 69, Ex. B, Affidavit of Michael Anderson ¶ 14, Ex. O17).

III.    LEGAL STANDARDS

A.    Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc.,  477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.  Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  *Id.*; *accord* Tipton

v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  Id.; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).  The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000); Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n. 5 (11th Cir. 1992).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

B.      First Amendment Standard

In his amended complaint, Plaintiff claims that Defendants violated the First Amendment by retaliating against him for filing grievances.  It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); see also Mitchell v. Farcass, 112 F.3d 1483, 1490

(11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (internal quotation and citation omitted). However, broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987). The prisoner plaintiff must sufficiently allege facts establishing that the actions taken against him were in retaliation for filing lawsuits and accessing the courts. Wright, 795 F.2d at 968. He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988). Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). Plaintiff must come forward with more than "general attacks" on Defendants' motivations and must produce "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El, 523 U.S. at 600 (citing Liberty Lobby, Inc., 477 U.S. at 256–57). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v. Conner, 115 S. Ct. 2293, 2299 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." Crawford-El, 523 U.S. at 598 (citation omitted); Harris v. Ostrout, 65 F.3d 912, 916–17 (11th Cir. 1995); see also Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism). "[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate

that even without the impetus to retaliate he would have taken the action complained of . . . ." Hartman v. Moore, --- U.S. ---, 126 S. Ct. 1695, 1704, 164 L. Ed. 2d 441 (2006) (citation omitted). To defeat a summary judgment motion, a plaintiff need not adduce clear and convincing evidence of improper motive.  Crawford-El, 523 U.S. 574.

"If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Id.* (citation omitted).  Indeed, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Id.* (citation omitted).  However, when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, retaliation is subject to recovery as the but-for cause of official action offending the Constitution.  *Id.* (citation omitted).

C.      Eighth Amendment Standard

Plaintiff also claims that Defendants' arranging the attack on him violated his Eighth Amendment protection from cruel and unusual punishment.  The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (internal quotation omitted)).  To prove a violation of the Eighth Amendment, a prisoner must show that the alleged deprivation was objectively serious sufficient to be of constitutional concern, and that the prison official acted with a sufficiently culpable state of mind by knowing of and disregarding an excessive risk to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

D.      Supervisory Liability

Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the

need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

E.    Eleventh Amendment Immunity

Defendants claim they are entitled to Eleventh Amendment immunity insofar as they is sued in their official capacities.  A suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45, 58 (1989).  Generally, absent waiver or express congressional abrogation, the Eleventh Amendment prohibits a suit against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985);

Gamble v. Florida Department of Heath and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986). Hence, Defendants are entitled to Eleventh Amendment immunity to the extent Plaintiff sues them in their official capacities.

  F.  Qualified Immunity

  Defendants assert they are entitled to qualified immunity from suit in their individual capacities. The doctrine of qualified immunity is a guarantee of fair warning. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

  In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. at 1194. The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, the trial court must determine whether a constitutional right has been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. Id.

  Second, if a violation has been established, the court must determine whether the right was "clearly established." Id. The very action in question need not have been held unlawful for an

official to lose the protection of qualified immunity.  Hope, 536 U.S. 739; Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar.  Hope, 536 U.S. at 739.  Instead, the law merely must give Defendants "fair warning" that their actions are unconstitutional.  Id.  In light of pre-existing law, the unlawfulness must be apparent.  Id.; Creighton, 483 U.S. at 640.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

In cases where improper motive is an element of the constitutional claim, a defendant is entitled to qualified immunity only when, among other things, "the record indisputably establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations."  Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000); *see also* Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996) ("the record makes it clear that Defendants' acts were actually motivated by lawful considerations without which they would not have acted.").

IV.    CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

In determining whether evidence may be considered on summary judgment, the court is mindful of the standard regarding the consideration of hearsay statements included in verified pleadings, affidavits, documents, and other materials submitted pursuant to Rule 56.  The general rule is that inadmissible hearsay, meaning an out-of-court statement presented for the purpose of establishing the truth of the content of the statement and that does not fall within an exception to the hearsay rule, may not be considered on a motion for summary judgment.  Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted).  The court may consider a hearsay statement if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form."  Id. at 1323 (quoting Wright v. Southland Corp., 187 F.3d 1287 (11th Cir. 1999); Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996); McMillian v. Johnson, 88 F.3d 1573, 1584-85 (11th Cir. 1996)).  Thus,

> the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose.  For example, the statement might be admissible because it falls within an exception to the hearsay rule,[FN14] or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), [FN15] or is used solely for impeachment purposes (and not as substantive evidence).[FN16]

*Id.* at 1323–24 (footnotes omitted).

In light of this standard, the court will address Defendants' Motion to Strike Affidavit of Brenda O'Bryant as Inadmissible Hearsay, and Plaintiff's response to the motion (Docs. 72, 74).  The basis for Defendants' motion is that Ms. O'Bryant's affidavit contains hearsay statements of a staff member of the Office of State Attorney of Holmes County (*see* Doc. 72).  The statement of the staff member is included in paragraph ten of Ms. O'Bryant's affidavit:

> 10.  I was advised by Amanda Hickman that prison officials at Holmes Correctional Institution did not notify the Holmes County State Attorney's Office regarding this physical assault to see about possibly pursuing criminal charges against inmate Larry Lewis for this attack.

(Doc. 71, Affidavit of Brenda O'Bryant).  In response to Defendants' motion to strike, Plaintiff states that the statement by Ms. Hickman is not offered for the truth of its contents; instead, it is offered solely for impeachment purposes (Doc. 74 at 2).  Plaintiff further argues that Ms. Hickman's statement creates a genuine issue of material fact because Defendants include in their "Undisputed Material Facts" section the fact that the local State Attorney's Office was notified of Inmate Lewis' battery on Plaintiff and the State Attorney declined to prosecute (*see* Doc. 37 at 8 ¶ 9), and Ms. Hickman's statement impeaches that material fact (*see* Doc. 74 at 3).

The undersigned concludes that the factual issue of whether or not the State Attorney was contacted is not material, as the outcome of this case would not be affected by the fact that the Inspector General's (IG) representative who investigated Inmate Lewis' attack contacted or did not contact the State Attorney.  Rule 33-601.303(3) of the Florida Administrative Code provides, "When it appears that laws of the state have been violated, the Office of the Inspector General shall be notified, who will in turn contact the State Attorney when deemed appropriate."  33 Fla. Admin. Code r. 33-601.303.  Plaintiff does not allege any facts suggesting that Inspector Cecil Smith, the IG inspector who investigated the attack, was in any way involved in the alleged constitutional

violations by Defendants, that Investigator Smith was motivated to cover up Defendants' conduct, or that Defendants in any way influenced or attempted to influence Investigator Smith's decision whether or not to contact the State Attorney.  Because the factual issue of whether the State Attorney was notified is not material to this case, the court did not consider this fact in deciding whether Defendants are entitled to summary judgment.  Therefore, Defendants' motion to strike evidence of this fact will be denied as moot.

In addition to Defendants' motion to strike, the undersigned reviewed all of the parties' submissions to determine whether the material conformed to the Rule 56 standard.  If a fact is not included in this section or section II *supra*, it is because the court has determined that it is not a material fact, the proponent's assertion of the fact is not based upon personal knowledge, or the fact is presented as hearsay and could not be reduced to admissible evidence at trial or reduced to admissible form.

A.     Defendant Langford

As evidence of Defendant Langford's involvement in the alleged attack by Inmate Lewis, Plaintiff states that four or five days prior to the attack, he filed a grievance against Langford and Segers (Doc. 69, O'Bryant Aff. ¶ 110).  Plaintiff also states that when he asked Inmate Lewis why he was moved out of his previous cell, Lewis responded that he had a "call out" from "up front" earlier that day (*id.*  ¶¶ 46, 47, 48).  Plaintiff states Lewis also stated that he believed he was moved to Plaintiff's cell by mistake because he understood he was being moved to cell #H2117 (*id.* ¶ 49). Plaintiff alleges Lewis further stated he was moved because Durrance, Segers, Finch, and Langford wanted him to "jump" someone and "f[ ] him up because of the paperwork he's been filing" (*id.* ¶¶ 50, 51).  Plaintiff states that later that evening, Defendant Langford made his rounds through the confinement unit where Plaintiff was housed and stopped at the cell occupied by Plaintiff and Inmate Lewis.  According to Plaintiff, Langford asked Lewis if he remembered their conversation from the other day (*id.* ¶¶ 53, 54).  Plaintiff alleges Lewis answered affirmatively, and Langford then told Lewis, "We still want you to handle that," and "Give it a day or two and you'll be back in a cell with your old roommate" (*id.* ¶¶ 55, 56, 59).  Langford then laughed and walked away (*id.* ¶ 60).  Plaintiff heard Defendant Langford say to Inmate Lewis on April 28, 2005, "Yeah, tomorrow would be a

good day . . . That'd [sic] be a good time." (*id.* ¶¶ 66–69).  Plaintiff states that Langford then laughed and walked away (*id.* ¶ 70).

Plaintiff states that on April 29, 2005, at approximately 11:30 a.m., Inmate Lewis attacked him, and during the attack, Lewis yelled, "Segers, Finch, and Langford said to go ahead and file more grievances and lawsuits," and "You like to file paperwork, huh.  The police said file on this." (*id*. ¶¶ 71, 74, 75).   Plaintiff states that the term "police" is used in the prison setting to refer to members of the correctional staff (*id*. ¶ 76).

Plaintiff alleges that on July 29, 2005, three months after the attack, Inmate Lewis apologized to him and told him that Pippin, Durrance, Segers, Finch, Langford, and other officers wanted him to attack Plaintiff, and if he attacked Plaintiff his remaining time at HCI would be easier (*id.* ¶¶ 100, 65).  Plaintiff alleges Lewis told him that after the attack, Defendant Durrance thanked him for attacking Plaintiff (*id*. ¶ 101).   Plaintiff states he asked Lewis if he would be willing to be interviewed by Inspector Smith, and Lewis stated that he had already been interviewed by Smith and he (Lewis) told Smith what Defendant Durrance told him to say (*id*.).   Lewis stated he did not want to speak to Inspector Smith again because Smith would tell Durrance, Segers, Langford, and Finch that Lewis changed his story, and those officers would then have him (Lewis) attacked (*id*.). According to Plaintiff, Lewis then stated that if he was away from Defendants Durrance, Finch, Segers, and Langford, he would tell the Inspector what really transpired, and if he was released from prison before he was transferred, he would be willing to talk to an investigator and testify at a trial (*id.* ¶ 102).

In addition to his own affidavit, Plaintiff submitted an affidavit of Inmate Claude Hughes in which Hughes states that on April 27, 2005, he heard Defendant Langford laughing and stating to Inmate Lewis, "You know why you were moved.  Remember what I talked to you about the other day.  Handle that for me and Finch." (Doc. 69, Ex. C, Affidavit of Claude Hughes ¶ 6).  Also included in Hughes' affidavit, as well as an affidavit of Inmate Michael Anderson, are those inmates' assertions that on April 28, 2005, they observed Langford approach the cell shared by Plaintiff and Inmate Lewis and state during a conversation with Lewis, "Yeah, tomorrow would be a good day . . . 12:30?  That'd [sic] be a good time" (Doc. 69, Ex. B, Anderson Aff. ¶ 9, Ex. C, Hughes Aff. ¶ 7).  Plaintiff also submitted an affidavit of Inmate Anthony Williams which states that

after Inmate Lewis attacked Plaintiff, Lewis stated that he attacked Plaintiff because several officers told him to; he was the officers' enforcer; and when inmates cause problems, the officers put him (Lewis) in the cell with them so he can hurt them and tell them who sent him and why (Doc. 69, Ex. J, Williams Aff. at 2).

In their special report, Defendants contend that Inmate Lewis was moved into Plaintiff's cell in preparation for the painting of cells in the housing unit (Doc. 37 at 13–14).  As evidence that the reason for the move was to paint Lewis' cell, Defendants offer the affidavit of Defendant Durrance which states that in April of 2005, he instructed Sergeant White and other confinement sergeants to move inmates at their convenience for the purpose of emptying cells so the maintenance crew could paint them (Doc. 37, Ex. G, Affidavit of Jesse Durrance ¶ 3).  Defendant Durrance states he never instructed any sergeants or officers to move Inmate Lewis into Plaintiff's cell so that Lewis could attack Plaintiff (*id*.).  Defendants also submitted an affidavit of Michael White, who was assigned as Disciplinary Confinement Sergeant on April 27, 2005 (Doc. 37, Ex. C at 16, White Affidavit).  Sergeant White attests that Inmate Lewis was moved to cell #H2118U in preparation for the painting of cells in the disciplinary confinement unit (*id*.).  White further attests that moves of several other inmates were planned that day, but the paint crew indicated they would not be there that day, so no other moves were made (*id*.).  Sergeant White states that during the two-week period prior to April 27, there were numerous moves throughout the disciplinary confinement unit, and inmate movement continued to the date of his affidavit (June of 2005) to accommodate the paint and maintenance crews (*id*.).  Sergeant White states that at no time was he instructed to place Lewis or any other inmate in Plaintiff's cell for the purpose of causing injury to Plaintiff, and that his instructions came from Captain Durrance for the specific reason to "make room" (*id*.).  Defendants also submitted an affidavit of Officer Robert Long, the officer who Plaintiff alleges moved Plaintiff's cellmate out of their cell to make room for Lewis.  Officer Long states that Inmate Lewis was moved to empty cells so that the cells could be painted (Doc. 37, Ex. C at 17, Affidavit of Robert R. Long).

As further evidence that Defendants did not move Inmate Lewis into Plaintiff's cell to attack Plaintiff, Defendants submitted an investigative report prepared by Inspector Cecil Smith in which Inspector Smith states that during his interview with Inmate Lewis, Lewis stated that he hit Plaintiff because he did not want to be in the cell with him, Lewis denied that anyone instructed him to beat

Plaintiff, and he stated he believed he was moved to Plaintiff's cell to allow for his cell to be painted (Doc. 37, Ex. C at 2).  Defendants contend these statements by Inmate Lewis are admissible because they are contained in investigative and incident reports which are admissible as records of regularly conducted activity and public records pursuant to Rule 803(6, 8) of the Federal Rules of Evidence (Doc. 37 at 14).

Defendants additionally submitted Defendant Langford's affidavit.  Defendant Langford states he had no involvement in the decision to move Inmate Lewis into Plaintiff's cell, and he was not working during the shift when Lewis was moved (Doc. 37, Ex. F, Affidavit of Jason Langford ¶ 3).  He further states he had no authority to direct other officers or sergeants to move inmates from cell to cell (*id.*).  Langford denies that he had the conversation with Inmate Lewis that Plaintiff alleges (*id.*  ¶ 4).  He further attests that he did not ask Lewis to attack, jump, or harm Plaintiff in any manner, and he is not aware of any staff being involved in any retaliation toward Plaintiff (*id.*).

To rebut Defendants' claim that Inmate Lewis was moved to cell #H2118 to accommodate the paint crew, Plaintiff submitted Daily Movement Sheets reflecting the moving of inmates at HCI for the two-week period prior to Lewis' attack (*see* Doc. 69, Ex. O2–O18).  The disciplinary confinement unit is wing 2 of the H dorm; thus, cells in the disciplinary confinement unit are identified on the Daily Movement Sheets as beginning with H2 (Doc. 69 at 17).  According to the Daily Movement Sheets, during the two-week period prior to the attack on Plaintiff, only one cell in the disciplinary confinement unit was actually emptied, cell #H2109, on April 20, 2005 (*see* Doc. 69 at 17–19, Ex. O).  Additionally, only Inmate Lewis was moved from cell #H2105 on April 27; Lewis' cellmate remained in that cell until April 29, when he and Lewis were both moved to cell #H2220 after Lewis' attack on Plaintiff (*id.*, Ex. O16 – O17).

Initially, the undersigned will address whether the evidence submitted by the parties may be considered on summary judgment.  Inmate Lewis' statements to Plaintiff on April 27, 2005, that he was moved to Plaintiff's cell because he had a "call out" from "up front," and Durrance, Segers, Finch, and Langford wanted him to "jump" someone and "f[ ] him up because of the paperwork he's been filing" are hearsay statements.  Plaintiff concedes that the statements are hearsay but argues that the statements qualify under the present sense impression exception to the hearsay rule (*see* Doc. 69 at 22–23).  Plaintiff's argument is unconvincing.  To qualify under the present sense

impression exception to the hearsay rule, the statement must describe or explain an event or condition, and the statement must be made while the declarant was perceiving the event or condition, or immediately thereafter.  Fed. R. Evid. 803(1).  Plaintiff argues that Lewis was describing his move to Plaintiff's cell and the conditions of the move; that Lewis made the statements without calculated narration; that Lewis personally perceived his move and the conditions surrounding it; and the statements were made immediately after Lewis moved to Plaintiff's cell (*see* Doc. 69 at 23). Plaintiff's argument fails.   Inmate Lewis was not describing an event that he was contemporaneously, or nearly contemporaneously, perceiving; rather, he was explaining how he learned he would be moved to Plaintiff's cell and his understanding of the reason for the move. Indeed, if Lewis' statements can be characterized as explaining an event, he was describing the "call out" and what occurred during that event, not the move itself.  Therefore, Plaintiff has failed to show that the statements could be reduced to admissible evidence at trial or reduced to admissible form. Accordingly, the statements by Inmate Lewis on April 27, 2005, after being moved into Plaintiff's cell may not be considered on summary judgment.

Plaintiff alleges that the statements Lewis made while he was attacking him qualify under the excited utterance exception to the hearsay rule (Doc. 69 at 24).  Rule 803(2) of the Federal Rules of Evidence provides, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.  Fed. R. Evid. 803(2).  This hearsay exception is premised on the concept that the excitement caused by the event "temporarily stills the declarant's capacity for reflection thus producing statements free of conscious fabrication."  M. Graham, Federal Practice and Procedure: Evidence § 7043.  The requirements for admissibility under this exception are:  (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate, that is, the statement must be made while still under the influence of the startling event or condition; and (3) a statement relating to the startling event or condition. *Id.*   In the instant case, Inmate Lewis' attack on Plaintiff was not an event that startled or alarmed Lewis.  Furthermore, the affidavit of Inmate Anthony Williams submitted by Plaintiff indicates that Lewis consciously and deliberately made such statements when he attacked other inmates. Therefore, Lewis' statements during the attack on Plaintiff do not qualify as excited utterances.

Because Plaintiff has failed to show that the statements could be reduced to admissible evidence at trial or reduced to admissible form, the statements by Inmate Lewis during the attack on Plaintiff may not be considered on summary judgment.

Additionally, Inmate Lewis' statements to Inmate Williams are hearsay as they are out-of-court statements offered to prove the truth of their contents, that is, that several officers told him (Lewis) to attack Plaintiff, and officers placed him in cells with inmates who cause problems so he can hurt them and tell them why they are being hurt and who sent him to hurt them.  Plaintiff has failed to show that the statements could be reduced to admissible evidence at trial or reduced to admissible form; therefore, the statements by Inmate Lewis to Inmate Williams may not be considered on summary judgment.

Inmate Lewis' statements to Inspector Smith offered by Defendants in the Investigative Report prepared by Cecil Lewis on June 27, 2005, the Incident Report prepared by Sergeant White on April 29,  2005, the Disciplinary Report Worksheet and Charging Disciplinary Report prepared by Officer White on April 29, 2005, are hearsay statements.  Although the documents themselves are admissible as public records or business records, hearsay statements contained therein that do not qualify under an exception to the hearsay rule may not be considered on summary judgment. Furthermore, to the extent Plaintiff offers Lewis' statements to him in July of 2005, in which Lewis explained why he said what he did to Inspector Smith during Smith's investigation, to impeach Lewis' statements contained in the public records and business records, in light of the fact that the hearsay statements included in the records are not being considered, consideration of the impeachment evidence is not proper.

Drawing all reasonable inferences in Plaintiff's favor, the evidence would support a jury finding that prior to Inmate Lewis' move to Plaintiff's cell, Defendant Langford and at least one other correctional officer asked Inmate Lewis to attack Plaintiff, and that Langford had a retaliatory motive for arranging the attack.  Additionally, viewing the pre-trial record in the light most favorable to Plaintiff, the record fails to show indisputably that Defendants were motivated (at least in part) to move Lewis into Plaintiff's cell by the legitimate reason they proffered, that is, to accommodate the painting of Lewis' cell.  Thus, the undersigned concludes that there exists a triable issue of fact regarding whether Defendant Langford's conduct violated the First and Eighth

Amendments.  In their special report, Defendants assert a qualified immunity defense; however, they argue only that there was no constitutional violation; they do not contend that their conduct, if unconstitutional, did not violate clearly established law.  In light of this court's conclusion that a jury could find that Defendant Langford's conduct violated Plaintiff's constitutional rights, Defendant Langford is not entitled to qualified immunity on the theory that there was no constitutional violation.  *See* <u>Farrow</u>, 320 F.3d at 1249 n.22 (holding that defendants were not entitled to qualified immunity on the theory that there was no constitutional violation where defendants argued only that theory and did not argue that if there was a constitutional violation, it was not of clearly established law).  Furthermore, even if Defendants argued that the violations were not of clearly established law, they still would not be entitled to qualified immunity as the law was clearly settled for several years prior to 2005 that a prison official's arranging for an inmate to be attacked by another inmate in retaliation for the inmate's filing grievances is prohibited by the Constitution.  *See* <u>Crawford-El</u>, 523 U.S. 574;  <u>Farmer v. Brennan</u>, 511 U.S. 825.  Therefore, Defendant Langford is not entitled to summary judgment in his favor.

  B. Defendant Durrance

  As evidence of Defendant Durrance's involvement in the alleged attack by Inmate Lewis, Plaintiff states that he had filed a grievance against Durrance one month prior to Lewis' attack (Doc. 69, O'Bryant Aff. ¶ 111).  Plaintiff states that on the evening of the day when Inmate Lewis was moved into his cell, Defendant Segers stopped at the cell when Lewis was standing at the cell door and asked Lewis "You're going to handle that for <u>us</u>?" (*id*. ¶¶ 61, 62) (emphasis added).  After Lewis responded, Segers laughed and walked away (*id*. ¶ 64).  Plaintiff also submitted the daily movement records from HCI which dispute Defendants' assertion that at least part of the reason for Lewis' move was to empty the cells for painting.  Finally, Plaintiff relies on hearsay statements that the undersigned previously determined did not qualify for consideration on summary judgment, for example, statements by Inmate Lewis.

  As discussed *supra*, Defendant Durrance states that in April of 2005, he gave instructions to Sergeant White and other confinement sergeants to move inmates for the purpose of emptying cells for painting (Doc. 37, Durrance Aff. ¶ 3).  Defendant Durrance states he was not working on the day that Inmate Lewis was moved into Plaintiff's cell, and he never instructed any sergeants or

correctional officers to move inmate Lewis into a cell with Plaintiff so that Lewis could attack Plaintiff (*id*.).  Defendant Durrance further states he never told Lewis or anyone else that he wanted Lewis to attack Plaintiff because of paperwork, grievances, or lawsuits he had filed (*id*.).  Defendant Durrance does not, however, dispute Sergeant White's statement that Durrance gave the instruction to move Lewis into Plaintiff's cell, albeit for the stated purpose of accommodating the painting crew.

Viewing the facts in the light most favorable to Plaintiff, the evidence would support a jury finding that Defendant Durrance had a retaliatory motive for moving Inmate Lewis into Plaintiff's cell, that Durrance instructed that Lewis be moved to Plaintiff's cell, and that more than one correctional officer arranged for Inmate Lewis to attack Plaintiff.  Additionally, as discussed *supra*, viewing the pre-trial record in the light most favorable to Plaintiff, the record fails to show indisputably that Defendants were motivated (at least in part) to move Lewis into Plaintiff's cell by the legitimate reason they proffered, that is, to accommodate the painting of Lewis' cell.  Thus, the undersigned concludes that there exists a triable issue of fact regarding whether Defendant Durrance's conduct violated the First and Eighth Amendments.  Furthermore, Defendant Durrance is not entitled to qualified immunity as the law prohibiting this conduct was clearly established in 2005.  Therefore, Defendant Durrance is not entitled to summary judgment in his favor.

C.    Defendant Finch

As evidence of Defendant Finch's involvement in the alleged attack by Inmate Lewis, Plaintiff states that on December 13, 2004, Defendant Finch searched Plaintiff's property while he was housed in general population (Doc. 69, O'Bryant Aff. ¶ 16).[2]  Plaintiff states that Finch told him that the cell search was "lesson one" about filing grievances at HCI; Finch then ordered Plaintiff to meet him behind the disciplinary confinement curtain for "lesson two" about filing grievances; behind the curtain, Finch told Plaintiff that Finch was instructed by "up front" to let Plaintiff know that it was time to stop filing grievances because it would not be tolerated much longer; and Finch then made several other unspecified threatening and harassing statements to Plaintiff (*id*. ¶¶ 17, 18).

---

[2]Plaintiff alleges that Defendant Finch was assigned to the disciplinary confinement unit at the time he searched Plaintiff's cell in general population; however, the facts do not suggest, nor has Plaintiff shown, that Plaintiff had personal knowledge of this fact.  Therefore, the court will not consider this fact in determining whether summary judgment is appropriate.

Plaintiff alleges that on December 16, 2004, while he was in administrative confinement, he was confronted by Defendant Finch (*id*. ¶ 29).  Finch stated, "I thought you were smart, Stupid.  That's alright, though.  You're in my world now, O'Bryant." (*id*.).  Plaintiff was issued a disciplinary report for an incident that allegedly occurred on December 17, 2004 (*id*. ¶ 30).  On March 29, 2005, Plaintiff was again placed in confinement, and Defendant Finch came to Plaintiff's housing unit to inventory and pack up Plaintiff's property (*id*. ¶¶ 34, 35).  Included in Plaintiff's property was a draft of a federal civil rights complaint naming Finch as a defendant (*id*. ¶¶ 36, 37).  Nearly one month later, on April 25 or 26, Defendant Finch stopped at Plaintiff's cell, opened the flap in the door, aggressively stared at Plaintiff, slammed the flap open, and told Plaintiff he saw the copy of the civil rights complaint with his name on it, and "that was a huge mistake on your part" (*id*. ¶¶ 38, 39).

Plaintiff also submitted an affidavit of Inmate Fredrico Flemming in which Flemming asserts that he was present on December 13, 2004, when Defendant Finch told Plaintiff, "So, you want to write grievances against Segers and Gillman, huh.  Here's lesson one about how we handle grievance writers at Holmes C.I.," and then Finch began searching Plaintiff's locker, removing Plaintiff's property and legal work, reading the legal work, and throwing the property around the cell (Doc. 69, Ex. H, Affidavit of Fredrico Flemming ¶¶ 12, 13).  Inmate Fleming states that Defendant Finch then instructed Plaintiff to go behind the curtain that separates the open population from the confinement housing area so that Plaintiff could "learn lesson two about grievance writing at Homes C.I." (*id*. ¶ 14).  Plaintiff additionally submitted the affidavit of Inmate Hughes, discussed *supra*, in which Hughes states that on April 27, 2005, he heard Defendant Langford laughing and stating to Inmate Lewis, "You know why you were moved.  Remember what I talked to you about the other day.  Handle that for me and Finch." (Doc. 69, Ex. C, Hughes Aff. ¶ 6).  Plaintiff also submitted an affidavit of Inmate Michael Salkowski which states that on June 30, 2005, Officer Finch gave him a corrective consultation regarding a rule infraction (Doc. 69, Ex K, Affidavit of Michael Salkowski).  During the consultation, Salkowski stated that he was going to write a grievance concerning the consultation, and Defendant Finch responded that he better not even think about doing so because he had already taken care of one inmate for writing grievances about him, and if Salkowski did write one, he (Finch) would make sure he received the same treatment as the other inmate (*id*.).  As further evidence of Defendant Finch's involvement, Plaintiff relies on hearsay

statements that the undersigned previously determined did not qualify for consideration on summary judgment, for example, statements by Inmate Lewis.

In his affidavit submitted with Defendants' special report, Defendant Finch denies Plaintiff's allegations and specifically states that he did not make the statements that Plaintiff alleges he made (Doc. 66, Ex. A, Affidavit of M.D. Finch ¶ 5). Defendant Finch additionally states that he did not issue a disciplinary report or cause a disciplinary report to be issued to Plaintiff for the incident on December 17, 2004 (*id.*). He states his rank does not authorize him to approve the writing of a disciplinary report (*id.*). Defendant Finch further states he had no involvement whatsoever with the December 17 disciplinary report (*id.*). Defendant Finch submitted a copy of the disciplinary report issued on December 17, 2004, which indicates that it was written by Officer B.G. Baines and approved by J.A. Peters; the charge was investigated by Scott Bush; and the disciplinary team was comprised of G.L. Taylor and Vanessa Rhynes (Doc. 66, Ex. B). Defendant Finch states that he had no involvement in the decision to move Inmate Lewis into Plaintiff's cell on April 27, 2005 (*id.* ¶ 4). Finch states he did not ask Lewis to attack or harm Plaintiff, and he is not aware of any staff being involved in any retaliation toward Plaintiff (*id.* ¶ 5).

Drawing all reasonable inferences in Plaintiff's favor, the evidence would support a jury finding that Defendant Finch participated with Defendant Langford in arranging for Inmate Lewis to attack Plaintiff, and that Finch had a retaliatory motive for doing so. As discussed *supra*, viewing the pre-trial record in the light most favorable to Plaintiff, the record fails to show indisputably that Defendants were motivated (at least in part) to move Lewis into Plaintiff's cell by the legitimate reason of accommodating the painting of Lewis' cell. Thus, the undersigned concludes that there exists a triable issue of fact regarding whether Defendant Finch's conduct violated the First and Eighth Amendments. Furthermore, Defendant Finch is not entitled to qualified immunity as the law prohibiting his conduct was clearly established in 2005. Therefore, Defendant Finch is not entitled to summary judgment in his favor.

D.      Defendant Pippin

As evidence of Defendant Pippin's involvement in the alleged attack by Inmate Lewis, Plaintiff alleges that on December 10, 2004, Pippin had a meeting with Defendant Segers and Officer Taylor concerning grievances that Plaintiff had filed (Doc. 8, Statement of Facts ¶ 4).

Plaintiff alleges Pippin told Segers and Taylor that if Plaintiff began having problems with inmates at HCI, it was part of inmate life and there was not anything they could do about it (*id*. ¶ 5).   Plaintiff asserts that later that night, Officer Taylor told numerous inmates in Plaintiff's housing unit that Plaintiff had filed a grievance complaining that Taylor permitted inmates to smoke in the housing unit (*id*. ¶ 6).   Plaintiff alleges two inmates approached Taylor the next day and inquired as to why he spread a false rumor about Plaintiff, and Taylor allegedly responded that he was doing as he was instructed at the meeting with Pippin and Segers (*id*. ¶¶ 7, 8).

In addition to this evidence, Plaintiff asserts that on December 15, 2004, he was interviewed by Defendant Pippin as part of an investigation of Plaintiff's complaint that he was receiving disciplinary reports in retaliation for filing grievances, and Pippin told him to stop filing grievances against staff because "You might need these officers one day." (*id*. ¶¶ 15–19).   Plaintiff additionally alleges that on April 29, 2005, after the attack by Inmate Lewis, Officer Hires asked Plaintiff if he was the one who "got jumped on" that day (*id*. ¶¶ 75–77).   When Plaintiff responded affirmatively, Hires asked who broke up the fight (*id*. ¶¶ 78–80).   When Plaintiff responded that confinement officers broke it up, Hires stated, "You might want to think about that" (*id*. ¶¶ 81, 82).   Plaintiff alleges Hires then stated that Plaintiff was lucky that the officers who were working were officers that Plaintiff had not filed grievances against, and had it been certain other officers working, things may have been different (*id*. ¶ 83).   Hires then stated, "We're required to respond, but sometimes we're not in a hurry if it's something we're really not interested in stopping. . . . You might want to think about it before you write up officers.   You may need us again one day." (*id*. ¶ 84).

In his affidavit submitted with Defendants' special report, Defendant Pippin denies that he ever made the alleged statements to Segers, Taylor, or any other correctional officer, staff, or employee (Doc. 37, Ex. D, Affidavit of Royce A. Pippin ¶ 4).   Defendant Pippin further denies that he ever made the statement to Plaintiff on December 15, 2004, or that he discouraged Plaintiff in any manner from filing grievances (*id.* ¶ 5).   Defendant Pippin states he had no involvement in the decision to move Lewis into Plaintiff's cell, that those decisions are usually made by housing staff, not colonels, and that he did not direct anyone to place any inmate in Plaintiff's cell (*id*. ¶ 6).   Pippin further attests that he has no knowledge of any staff ever arranging for an inmate to assault Plaintiff in retaliation for filing grievances or lawsuits, nor did he have any information that would have led

him to believe that any staff would take any retaliatory action against Plaintiff (*id.*). Defendant Pippin states he is unaware of any informal or formal grievances from Plaintiff that were addressed to him or forwarded to him for a response (*id.*). Pippin attests that he has never retaliated in any fashion against Plaintiff or any other inmate for filing grievances, lawsuits, or for any other reason, and he would never condone nor tolerate such behavior (*id.* ¶ 7).

Defendant Segers states he never had a meeting with Defendant Pippin on December 10, 2004, regarding grievances filed by Plaintiff (Doc. 37, Ex. J, Affidavit of Ronnie Segers ¶ 3). Defendant Segers further states he never told Officer Taylor to tell inmates in Plaintiff's dormitory that Plaintiff field a grievance against Taylor for allowing inmates to smoke in the housing units (*id.*).

In light of the denials of Defendants Pippin and Segers that a meeting occurred during which Plaintiff was discussed, Plaintiff was required to come forward with evidentiary material demonstrating a genuine issue of fact as to whether the meeting took place during which Pippin, Segers, and Taylor discussed Plaintiff's writing grievances. Plaintiff submitted affidavits of Inmates Wayne Doty and Fredrico Fleming in which these inmates attest that Officer Taylor spread the false rumor about Plaintiff and then told them that he was instructed to do so as a result of the meeting with Segers and Pippin on December 10, 2004 (Doc. 69, Exs. F, G, H). However, Officer Taylor's alleged statements regarding the meeting with Pippin and Segers are not properly considered under Rule 56 because they are hearsay, and Plaintiff has failed to show that the statements could be reduced to admissible evidence at trial or reduced to admissible form. Therefore, Plaintiff has failed to show a genuine issue of material fact exists as to whether Pippin, Segers, and Taylor attended a meeting during which they discussed Plaintiff's filing grievances, and whether Pippin or Segers or both instructed Taylor to spread a false rumor about Plaintiff to other inmates. In light of Plaintiff's failure to show a genuine issue of material fact as to whether the meeting occurred, the fact that Taylor spread a false rumor about Plaintiff is not material to this case, as Officer Taylor is not a Defendant, and there is no other evidence from which a reasonable inference could be drawn linking Taylor's conduct with Defendants' allegedly unconstitutional conduct. Therefore, the fact that Taylor spread the rumor will not be considered in deciding summary judgment.

Officer Hires' statements that officers delay responding to the needs of inmates who have filed grievances against them are out-of-court statements, but Plaintiff argues he is not offering the statements to prove the truth of the matter asserted; rather, he is offering them to show the "strikingly similar" language used by Defendant Pippin and Officer Hires, one of Pippin's subordinates, to discourage Plaintiff from filing grievances (that is, that Plaintiff should refrain from filing grievances because he may need officers' services some day) (*see* Doc. 69 at 38).  Plaintiff presumably offers Hires' statements as evidence that Defendant Pippin directed his subordinates to retaliate against inmates who write grievances, or at least he knew that his subordinates would retaliate and failed to stop them from doing so, thereby impeaching Pippin's statement that he would never condone or tolerate retaliation against inmates for filing grievances or lawsuits.  The undersigned concludes that Plaintiff has shown that the statements could be reduced to admissible evidence at trial or reduced to admissible form; therefore, the statements of Officer Hires will be considered on summary judgment.

Viewing the evidence in the light most favorable to Plaintiff, the evidence would support a jury finding that in December of 2004, Defendant Pippin knew that Plaintiff had complained that officers were retaliating against him for filing grievances, that Pippin discouraged Plaintiff from filing grievances against staff by telling Plaintiff that he may need those officers one day, and that Pippin knew that his subordinates were retaliating against inmates for filing grievances, but he failed to stop them from doing so.  Thus, the undersigned concludes that there exists a triable issue of fact regarding whether Defendant Pippin knowingly permitted officers to retaliate against inmates in violation of the First Amendment.  Furthermore, Defendant Pippin is not entitled to qualified immunity, as the law prohibiting his conduct was clearly established in 2005.  As to Plaintiff's Eighth Amendment claim, however, the evidence would not support a jury finding that Defendant Pippin participated in arranging the attack on Plaintiff, that there was a history of widespread abuse that put Pippin on notice of such conduct by officers, or that Pippin knew that staff would arrange for Plaintiff to be attacked and failed to prevent it.  Therefore, Defendant Pippin is entitled to summary judgment on Plaintiff's Eighth Amendment claim, but he is not entitled to summary judgment on Plaintiff's First Amendment claim.

E.    Defendant Segers

As evidence of Defendant Segers' involvement in the attack by Inmate Lewis, Plaintiff states that in December of 2004 he filed a grievance against Segers, and Segers returned the grievance to Plaintiff on the evening of December 10, 2004 (Doc. 69, Ex. A, O'Bryant Aff. ¶ 11).   Plaintiff additionally states that four or five days prior to the attack, he filed a grievance against Langford and Segers (*id.* ¶ 110).   Plaintiff alleges that on the evening of April 27, the day Inmate Lewis was moved into his cell, Defendant Segers stopped at the cell when Lewis was standing at the cell door and asked Lewis, "You're going to handle that for us?" (*id.* ¶¶ 61, 62).   After Lewis responded, Segers laughed and walked away (*id.* ¶ 64).   Plaintiff additionally relies on hearsay statements that the undersigned previously determined did not qualify for consideration on summary judgment, for example, statements by Inmate Lewis and Officer Taylor.

In his affidavit submitted with Defendants' special report, Defendant Segers states that he was not working during the shift when Inmate Lewis was moved to Plaintiff's cell, and he had nothing to do with the move (Doc. 37, Segers Aff. ¶ 4).   Defendant Segers states he never directed, asked, or requested Lewis to attack Plaintiff (*id.*).

Drawing all reasonable inferences in Plaintiff's favor, the evidence would support a jury finding that Defendant Segers participated in arranging for Inmate Lewis to attack Plaintiff, and he had a retaliatory motive for doing so.   As discussed *supra*, viewing the pre-trial record in the light most favorable to Plaintiff, the record fails to show indisputably that Defendants were motivated (at least in part) to move Lewis into Plaintiff's cell by the legitimate reason of accommodating the painting of Lewis' cell.   Thus, the undersigned concludes that there exists a triable issue of fact regarding whether Defendant Segers' conduct violated the First and Eighth Amendments.   Furthermore, Defendant Segers is not entitled to qualified immunity, as the law prohibiting his conduct was clearly established in 2005.   Therefore, Defendant Segers is not entitled to summary judgment in his favor.

V.     CONCLUSION

Upon consideration of Plaintiff's claims and the evidence submitted, the undersigned concludes that none of the Defendants are entitled to summary judgment on Plaintiff's First Amendment claim, nor are these Defendants entitled to the defense of qualified immunity on his claim.   The undersigned also concludes that only Defendant Pippin is entitled to summary judgment

on Plaintiff's Eighth Amendment claim.  Finally, all Defendants are entitled to Eleventh Amendment Immunity from Plaintiff's claims for monetary damages against them in their official capacities.

Accordingly it is **ORDERED**:

Defendants' Motion to Strike Affidavit of Brenda O'Bryant as Inadmissible Hearsay (Doc. 72) is **DENIED as moot**.

And it is respectfully **RECOMMENDED**:

1.      That Defendants' motions for summary judgment (Docs. 37, 66) be **GRANTED** as to Plaintiff's claims against them in their official capacities.

2.      That Defendants' motions for summary judgment (Docs. 37, 66) be **DENIED** as to Plaintiff's First Amendment claims against them in their individual capacities.

3.      That Defendants Langford, Durrance, Segers, and Finch's motions for summary judgment (Docs. 37, 66) be **DENIED** as to Plaintiff's Eighth Amendment claims against them in their individual capacities.

4.      That Defendant Pippin's motion for summary judgment (Doc. 37) be **GRANTED** as to Plaintiff's Eighth Amendment claim against him in his individual capacity.

5.      That the clerk be directed to return this file to the undersigned for further proceedings.

At Pensacola, Florida, this 21st day of May 2007.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**